IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONALD C. PERKINS, JR.                                                              PLAINTIFF

V.                              CASE NO. 4:16-CV-4043

KIAMICHI RAILROAD COMPANY, LLC,
and JOHN DOES 1-5                                                                  DEFENDANTS

## **MEMORANDUM OPINION**

Before the Court is Defendant Kiamichi Railroad Company's ("Kiamichi") Motion for Summary Judgment. ECF No. 24. Plaintiff has filed a response. ECF No. 31. Defendant Kiamichi has filed a reply. ECF No. 35. The Court finds this matter ripe for consideration.

### **BACKGROUND**

This case concerns the death of Plaintiff's wife, Velma Marie Perkins (the "Decedent"). Plaintiff sues personally and on behalf of the Decedent's estate. ECF No. 3. The Decedent sustained injuries and damages while an employee of Domtar, Inc., ("Domtar") as the result of an industrial accident on September 15, 2015. ECF No. 3, ¶ 5. At the time of the accident, the Decedent was riding on a railcar provided to Domtar by Defendant Kiamichi. The railcar was moving through a maintenance building on the Domtar premises when the top of the railcar collided with the top of the building's entryway because the railcar was too tall to enter the building. The Decedent was knocked off the railcar and killed.

The railcar involved was a "high capacity" railcar, and the words "EXCESS HEIGHT CAR" were stenciled on each end. ECF No. 28, ¶ 11; ECF No. 32. The railcar's dimensions were stenciled on each side. ECF No. 28, ¶ 12; ECF No. 32. It is undisputed that "[t]here is no evidence that before this incident, car height was ever an issue at the mill or that Domtar ever discussed car-

height and vertical-clearance requirements with Kiamichi," ECF No. 28, ¶ 17; ECF No. 32, and the Domtar employee who ordered railcars on Domtar's behalf was not aware of any railcar height restrictions, ECF No. 28, ¶ 20; ECF No. 32. It is also undisputed that "[o]f the six Domtar employees deposed in this case, including the safety manager and those involved in ordering and switching cars, none of them knew the maintenance building's height before the accident." ECF No. 28, ¶ 18; ECF No. 32. Likewise, Plaintiff concedes that "[a]t the time of the accident, Domtar did not have signs posted telling the height at the entrance to the [] maintenance building." ECF No. 28, ¶ 24; ECF No. 32. It is undisputed that Domtar owns the yard where the railcar was stored and that Kiamichi employees would need Domtar's permission to be in the yard. ECF No. 28, ¶¶ 3, 4; ECF No. 32.

At the time of the incident, Domtar and Defendant Kiamichi were parties to a "Switching Allowance Contract" (the "Contract"). ECF No. 26-1; ECF No. 28, ¶ 2; ECF No. 32. Pursuant to the Contract, once Defendant Kiamichi delivered railcars to the yard at the Domtar facilities, Domtar employees would move the railcars within the Domtar premises for loading purposes and then return them to the yard for transport. ECF No. 32, p. 2; ECF No. 26-1 ("WHEREAS, Domtar performs its own switching services in and about the Facility and Domtar and [Kiamichi] have agreed upon the basis upon which Domtar shall provide its own switching services . . . Domtar agrees to perform its own switching services in and about the Facility[.]"). Under the Contract, Kiamichi paid Domtar $40.00 per loaded car for performing its own switching services. ECF No. 26-1. The Contract further provided that "Domtar assumes all responsibility for the performance of its own switching and spotting services in, on and about Domtar's facility." ECF No. 26-1.

Plaintiff seeks relief under theories of strict products liability and negligence. ECF No. 3. Plaintiff seeks compensatory damages, punitive damages, attorney's fees and costs, and post-judgment interest. ECF No. 3.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party

opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999). The non-moving party "must come forward with sufficient evidence to support their claims and cannot stand on their complaint and unfounded speculation." *Id*. (internal citations omitted).

## DISCUSSION

As noted above, Plaintiff seeks relief under theories of strict products liability and negligence. The Court will address each theory in turn.

### I. Strict Products Liability

Defendant Kiamichi argues that Plaintiff's strict liability claims fail because the railcar in question was not defective or unreasonably dangerous.

The Arkansas Code provides that:

> A supplier of a product is subject to liability in damages for harm to a person or to property if: (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) The defective condition was a proximate cause of the harm to a person or to property.

Ark. Code Ann. § 16-116-101; *see Pilcher v. Suttle Equip. Co.*, 223 S.W.3d 789, 794 (Ark. 2006) ("In order to state a cause of action under a theory of strict liability, a plaintiff must plead that: (1) he has sustained damages; (2) the defendant was engaged in the business of manufacturing,

4

assembling, selling, leasing, or distributing the product; (3) the product was supplied by the defendant in a defective condition which rendered it unreasonably dangerous; (4) the defective condition was a proximate cause of plaintiff's damages."). The plaintiff has the burden of proving that the product in question was both in a "defective condition" and "unreasonably dangerous." *Pilcher*, 223 S.W.3d at 794.

"Defective condition" is defined as "a condition of a product that renders it unsafe for reasonably foreseeable use and consumption." Ark. Code Ann. § 16-116-202(2). "Proof that the product was defective is an essential element of a cause of action based on strict liability." *Pilcher*, 223 S.W.3d at 794. Generally, a plaintiff must "prove a defect in design or manufacture which was a proximate cause of the injury, and thus must prove that the product was in a defective condition when it left the hands of the seller." *Lee Cnty., Ark. v. Volvo Const. Equip. N. Am., Inc.*, No. 2:07-CV-00082, 2008 WL 4999063, at *4 (E.D. Ark. Nov. 20, 2008).

However, "the plaintiff is not required to prove a specific defect when common experience tells us that the accident would not have occurred in the absence of a defect." *Williams v. Smart Chevrolet Co.*, 730 S.W.2d 479, 482 (Ark. 1987). "In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant." *Higgins v. Gen. Motors Corp.*, 465 S.W.2d 898, 900 (Ark. 1971). The mere possibility that a defendant sold a product which he should not have sold and that it caused the injury is not enough. *Williams*, 730 S.W.2d at 482. "The mere fact of an accident, standing alone, does not make out a case that the product was defective[.]" *Id.*

5

Upon review of Plaintiff's response to Defendant Kiamichi's Motion for Summary Judgment, the Court notes that Plaintiff does not specifically state what condition of the railcar at issue was defective.[1] However, as noted above, Plaintiff is not required to prove a specific defect where "common experience tells us that the accident would not have occurred in the absence of a defect." Nonetheless, it cannot be said that the accident in question—a railcar colliding with the top of an entryway it is too large to fit through—would not have happened in the absence of a defect in the railcar.[2] In fact, such a collision is guaranteed to happen every time a non-defective railcar is pushed through a space that cannot accommodate its size.

Furthermore, Plaintiff has not "negate[d] the other possible causes of failure of the product for which the defendant would not be responsible." Defendant Kiamichi argues that the accident "could have happened because the shed was too low and its height was not posted as required by law." Plaintiff notes this argument but does not explain why it fails, simply stating that "[t]he proof negates these alleged 'other causes' or, at the very least, it is a question for the jury." ECF No. 31, p. 9. This conclusory statement is insufficient to negate other possible causes of the incident for which Defendant Kiamichi would not be responsible.

Accordingly, summary judgment in Defendant Kiamichi's favor is appropriate in regard to Plaintiff's strict liability claims as Plaintiff has failed to come forward with sufficient evidence to

---

[1] Instead, Plaintiff appears to argue that the railcar was in a "defective condition" that was "unreasonably dangerous" because it was a Plate F+ railcar and therefore taller than the Plate C and Plate F railcars Defendant Kiamichi had previously provided to Plaintiff. Plaintiff does not argue that Plate F+ railcars are inherently defective, but instead argues that Plate F+ railcars are defective in relation to Plaintiff's needs, stating, "[b]y supplying a railcar to Domtar that was unsafe for use in the plant *when* Kiamichi knew the plate requirements for Domtar's needs rendered it defective for foreseeable use." ECF No. 31, p. 7 (emphasis in original).

[2] Plaintiff's safety expert, George A. Gavalla, testified that the railcar in question was not in-and-of-itself defective, stating: "I wouldn't call it . . . defective. I would consider it inappropriate for use by that customer." ECF No. 26-10, p. 99.

support his claims that the railcar in question was in a "defective condition." The Court need not discuss the other requirements found in Ark. Code Ann. § 16-116-101 in light of this finding.

## II. Negligence

Defendant Kiamichi argues that Plaintiff's negligence claims fail because Kiamichi owed no duty under the present circumstances.

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." *Robinson Nursing and Rehabilitation Center, LLC v. Phillips*, 519 S.W.3d 291 (Ark. 2017) (citing *Branscumb v. Freeman*, 200 S.W.3d 411 (Ark. 2004)); *see Marlar v. Daniel*, 247 S.W.3d 473, 476 (Ark. 2007) ("In order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them."). The question of what duty, if any, the defendant owed a plaintiff alleging negligence is a question of law. *Marlar*, 247 S.W.3d at 476. "If no duty of care is owed, summary judgment is appropriate." *Id*. Negligence is never presumed as Plaintiff has the burden of proving negligence. *Robinson Nursing*, 519 S.W.3d 291. "Negligence may be established by direct or circumstantial evidence, but a plaintiff may not rely on inferences based on conjecture or speculation." *Id*.

Plaintiff alleges that Defendant Kiamichi had multiple duties. The Court will address each of these alleged duties in turn.

### A. Manufacturer's Duties

Plaintiff claims that various duties of "manufacturers" apply to Defendant Kiamichi. As such, the Court must determine whether Defendant Kiamichi is a "manufacturer" for the present

purposes. Plaintiff takes the position that Defendant Kiamichi can be deemed a "manufacturer"[3] for duty purposes because "under Arkansas law, a supplier-vendor who puts out as its own a product manufactured by another is subject to the same liability as though it was the manufacturer." In support of this contention Plaintiff cites Arkansas Model Jury Instructions—Civil ("AMI") 1004 and *Dildine v. Clark Equip. Co.*, 666 S.W.2d 692 (Ark. 1984).[4]

AMI 1004 provides "[o]ne who puts out as its own a product manufactured by another is subject to the same liability as though it were its manufacturer." AMI 1004 (Dec. 2017). In *Dildine*, one of the defendants, Town and Country International, Inc., ("Town and Country") was the distributor of a Bobcat front-end loader that caused the plaintiff's injuries. However, the court found that the Circuit Court's grant of a directed verdict in favor of Town and Country was correct. *Dildine*, 666 S.W.2d at 695. In asserting Town and Country's liability, the plaintiff relied "on the principle that one who puts out a product as his own which is manufactured by another is subject to the same liability as the manufacturer," however, the court found that there was no proof that the Bobcat was distributed by Town and Country as its own product. *Id*. In support of this finding, the court noted that "[t]he owners manual, the warranty, the operators handbook, a document called 'Delivery Inspection', perhaps the machine itself, all show the Bobcat to be the product of Clark Equipment Company." *Id*.

In the present case, Plaintiff fails to support its assertion that Defendant Kiamichi was putting out railcars as its own. Plaintiff has provided no evidence that Defendant Kiamichi in any

---

[3] Ark. Code Ann. § 16-116-202(3) defines "manufacturer" as "the designer, fabricator, producer, compounder, processor, or assembler of any product or its component parts." Plaintiff does not allege that Defendant Kiamichi falls under this definition.

[4] Plaintiff also cites *Parker v. Seaboard Coastline R.R.*, 573 F.2d 1004 (8th Cir. 1978). However, the *Parker* plaintiff did not claim that the supplier of the railcar at issue in *Parker* could be held to the same liability standards as the manufacturer. Accordingly, it is unclear why Plaintiff cites *Parker*.

way represented that it was the manufacturer of railcars or provided materials that would suggest it was the manufacturer. Further, Defendant Kiamichi has provided emails between employees of Domtar and Defendant Kiamichi in which it is clear that Defendant Kiamichi leases the cars it provides to Domtar from another company. ECF No. 31-5, p. 1 ("GE has additional . . . boxcars that we can lease on a *per diem* basis, just as the current cars leased from them are."); ECF No. 31-6, p. 1 (discussing Defendant Kiamichi's decision to return some of the railcars Domtar had been using to the owner of the railcars due to Domtar's underutilization). Accordingly, Defendant Kiamichi is not subject to liability as though it were the manufacturer of the railcar and, therefore, the manufacturer's duties Plaintiff cites are inapplicable. Thus, summary judgement in Defendant Kiamichi's favor is appropriate in regard to Plaintiff's negligence claims based on alleged breach of manufacturer's duties.

### B. Duty to Inspect

Plaintiff argues that Defendant Kiamichi had a duty to inspect the railcar in question to protect users of the railcar or those in the area of use from unreasonable risk of harm. However, Plaintiff has submitted no proof that Defendant Kiamichi failed to inspect the railcar at issue. Accordingly, summary judgement in Defendant Kiamichi's favor is appropriate in regard to Plaintiff's negligence claims based on the alleged breach of the duty to inspect.

### C. Duty to Furnish a Reasonably Safe Railcar

Plaintiff argues that Defendant had a duty to furnish Domtar with a reasonably safe railcar, citing *Chicago, R.I. & P.R. Co. v. Williams*, 245 F.2d 397, 399 (8th Cir. 1957), in which the door of a boxcar fell off and injured the plaintiff who had been struggling to close the door. ECF No.

9

31, p. 14. Plaintiff has not offered any argument on this point or explained the applicability of *Chicago, R.I. & P.R. Co.* to the present matter, but simply states it as a conclusion.

Defendant Kiamichi argues that, although carriers have a duty to furnish a reasonably safe railcar for loading and unloading, that duty is not implicated by the present facts. ECF No. 25, p. 12. The Court finds Defendant Kiamichi's argument persuasive. The cases cited by the parties which discuss the duty to provide reasonably safe railcars all concern railcars that are somehow damaged or otherwise fail to work as expected. *Chicago, R.I. & P.R. Co.*, 245 F.2d 397 (in which the boxcar's door fell off and caused injury); *Missouri Pac. R. Co. v. Armstrong*, 141 S.W.2d 25 (Ark. 1940) (in which plaintiff was injured when he fell through a hole in the floor of the railcar). As noted above, Plaintiff does not assert that the railcar presently at issue was damaged and has failed to provide any proof that the railcar was damaged or otherwise had some inherent defect.

Accordingly, the duty to furnish a reasonably safe railcar is not relevant to the present case and summary judgment in Defendant Kiamichi's favor is appropriate in regard to Plaintiff's negligence claims based on the alleged breach of this duty.

### D. Duty to Warn

Plaintiff argues that Defendant Kiamichi had a duty "to warn [the Decedent] (and Domtar) of dangers inherent or reasonably foreseeable in the use of the railcar, including warnings as to the dangerous qualities of the product." ECF No. 31, p. 14. In support of this claim, Plaintiff cites AMI 1005, which states:

> One who sells a product which it knows or has reason to know is likely to be dangerous when used in the manner or for the purpose for which it was designed has a duty to give a reasonable and adequate warning of that danger. A violation of this duty is negligence. There is no duty, however, to warn a user of obvious dangers or of those known to her or of those which she should reasonably discover for herself.

AMI 1005 (Dec. 2017).

In reply, Defendant Kiamichi notes that "[t]he vendor's duty to warn applies when it has reason to know that the product is likely to be dangerous when used as designed." Defendant Kiamichi argues "[t]his car was not dangerous when used as designed—it was designed for use in places where it fits." ECF No. 35, p. 13.

Upon consideration, the Court finds that the duty discussed in AMI 1005 is inapplicable under the present facts. As evidenced by the caselaw cited in the commentary, this duty is implicated in cases where the product at issue allegedly had some defect, flaw, or was inherently dangerous. *See, e.g.*, *Forrest City Mach. Works, Inc. v. Aderhold*, 616 S.W.2d 720 (Ark. 1981) (discussing duty to warn in a negligent design/negligent manufacture case regarding injuries caused by farm equipment); *Lilly v. J. A. Riggs Tractor Co.*, 386 S.W.2d 488 (Ark. 1965) (discussing whether seller of earth-moving equipment had a duty to warn that damaged cables should not be cut and finding no duty). As previously noted, Plaintiff does not assert that the railcar presently at issue had any specific flaw and has failed to provide any proof that the railcar was defective or inherently dangerous.

Therefore, Defendant Kiamichi is entitled to summary judgment in regard to Plaintiff's negligence claims based on the alleged breach of this duty.

### E. Duty to Protect Decedent from Foreseeable Risk

Plaintiff also appears to argue that Defendant Kiamichi had a duty to protect the Decedent from a foreseeable risk.

"[A] defendant is under no duty to guard against risks it cannot reasonably foresee." *Coca-Cola Bottling Co. of Memphis, Tennessee v. Gill*, 100 S.W.3d 715, 724 (Ark. 2003). "The question,

however, is not whether a defendant could have reasonably foreseen the exact or precise harm that occurred, or the specific victim of the harm. . . . It is only necessary that the defendant be able to reasonably foresee an appreciable risk of harm to others." *Id*.

Plaintiff argues that "it was foreseeable that [the Decedent], a helper engaged in moving the cars supplied by Kiamichi, would be the end user of the product and that [the Decedent] would rely on Kiamichi's representations as to the type of car it was providing." ECF No. 31, p. 13. Plaintiff notes that "Kiamichi only supplied two types of cars in the Domtar pool – Plate C (aka standard cars) and Plate F boxcars (aka NOKL high-cube cars)." ECF No. 31, p. 4. In reply, Defendant Kiamichi states "[t]he fact that Kiamichi should have foreseen an end-user of the car says nothing about whether Kiamichi should have foreseen what happened in these circumstances. . . . Nothing in the record suggests that Kiamichi had any reason to foresee height issues on Domtar's property[.]" ECF No. 35, p. 13.

Upon consideration, Plaintiff's arguments are unconvincing. It is undisputed that Domtar never apprised Defendant Kiamichi of any height restrictions on the Domtar property and there is no evidence to suggest that height was ever discussed as a limiting factor in determining which railcars Domtar could use. Furthermore, it is undisputed that Domtar owns the yard where the railcar was stored and that Kiamichi employees would need Domtar's permission to be in the yard. ECF No. 28, ¶¶ 3, 4; ECF No. 32. Likewise, it is undisputed that "[o]f the six Domtar employees deposed in this case, including the safety manager and those involved in ordering and switching cars, none of them knew the maintenance building's height before the accident" and Plaintiff concedes that "[a]t the time of the accident, Domtar did not have signs posted telling the height at the entrance to the [] maintenance building." ECF No. 28, ¶ 24; ECF No. 32. Finally, Defendant

Kiamichi and Domtar were parties to a contract whereby Domtar agreed to perform all switching activities within the Domtar facility.

Under these facts there is simply nothing to suggest that Defendant Kiamichi had reason to know or opportunity to discover any height limitations on the Domtar premises. Although Plaintiff argues that Kiamichi had only supplied two types of railcars in the past, Plaintiff has provided no evidence that Defendant Kiamichi was told that Domtar could only accommodate these sizes of railcars. Accordingly, Defendant Kiamichi could not reasonably foresee an appreciable risk of harm to others in providing Domtar (or the Decedent) with the railcar at issue and thus owed no duty.

Therefore, Defendant Kiamichi is entitled to summary judgment in regard to Plaintiff's negligence claims based on the alleged breach of this duty.

## CONCLUSION

For the foregoing reasons the Court finds that Defendant Kiamichi Railroad Company's Motion for Summary Judgment (ECF No. 24) should be and hereby is **GRANTED** as no genuine issues of material fact remain. A Judgment of even date shall issue.

**IT IS SO ORDERED**, this 18th day of December 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge